■ WINSLOW M. CANTY, as Administrator of the Estate of WINSLOW E. CANTY, Deceased, et al., Respondents, v NEW YORK CITY HEALTH AND HOSPITALS CORPORATION, Appellant.—

The verdict in plaintiffs' favor was based on the negligence of New York City Health and Hospitals Corporation in responding to a 911 call concerning plaintiff Marlene Canty, a 21-year-old married woman, who was, at the time, approximately seven months pregnant with her first child. After the third call, at which time there had still been no response from the emergency medical service, Mrs. Canty gave birth. The baby was alive, still encased in the amniotic sac. An ambulance finally arrived at the Canty apartment at about 4:27 A.M., approximately an hour and one half after the first 911 call. The jury also found Health and Hospitals negligent in its emergency treatment of the infant, who, after surviving for 24 hours, died, according to the autopsy report, from respiratory distress syndrome, as well as pulmonary hemorrhage and bleeding in the brain. Plaintiffs' expert testified that the cause of death was trauma, which had to be inflicted after birth. The expert also cited the slow response time of the emergency service personnel as a contributing factor, reasoning that had the response been timely, the infant would have been born in a hospital where adequate care could have been rendered. The expert discounted respiratory distress syndrome as a cause of death. The jury awarded $75,000 to the infant's estate for conscious pain and suffering but did not award damages for wrongful death. Marlene Canty was awarded $350,000 upon a finding that she "was aware of the surrounding circumstances as they occurred", and "suffered * * * shock, fright or emotional distress." She was not awarded any damages "for pain and suffering between the first call and her arrival at the hospital."

On appeal, Health and Hospitals raises a number of issues. It argues that the trial court committed reversible error in excluding a statement—contained in a UF-61 police report—allegedly attributed to the husband, plaintiff Winslow Canty, that his first two phone calls were not to 911, but to Harlem Hospital. The document did not qualify for admission as a business record exception to the hearsay rule. Not only must the entrant be under a business duty to record the event, but the informant, as well, must be under a similar duty to report the occurrence to the entrant. (*Johnson v Lutz*, 253 NY 124, 128; *Matter of Leon RR*, 48 NY2d 117, 122-123.) In the case at bar, while Health and Hospitals demonstrated that former Police Officer Korsnes, the recorder of the underlying facts,

was under a duty to report the incident, it failed to meet the second prong of the *Lutz* test. Officer Korsnes conceded at trial that he could not identify the person who furnished the information for the report. Thus, since the source of the information was unknown, the UF-61 was properly excluded as a business record exception to the hearsay rule. *(See, Murray v Donlan,* 77 AD2d 337, 346-347, *appeal dismissed* 52 NY2d 1071.)* Nor is the rule of *Kelly v Wasserman* (5 NY2d 425) available to admit the purported statement of Mr. Canty since, unlike *Kelly,* there is no evidence here that Canty ever made the statement.

Health and Hospitals also sought to admit the UF-61 as a prior inconsistent statement. While the limited portion of the UF-61 containing Canty's alleged statement would qualify for admission as a prior inconsistent statement, that part of the document would still have to be admitted in evidence before it could be so used. *(See, Hanlon v Ehrich,* 178 NY 474, 480-481.) Since the authorship of the statement was never established, the hearsay character of even the limited portion of the statement would still remain as an insuperable barrier to its admission. And, while the court should have allowed Health and Hospitals to call Detective Cardona to impeach Canty's credibility on this subject, it is clear from the cross-examination of the witness that the UF-61's recital that he had initially called Harlem Hospital was conveyed to the jury even though Canty, upon being shown the document, steadfastly denied having done so. Thus, we do not find that the court committed reversible error in this regard.

Equally devoid of merit is the argument that plaintiffs failed to prove that Health and Hospitals owed them a "special duty" to provide Mrs. Canty with prompt assistance. Specifically, it argues that plaintiffs failed to make out a prima facie showing of justifiable reliance, one of the four factors enumerated in *Cuffy v City of New York* (69 NY2d 255) as essential to establishing such a duty. As the record discloses, however, Mr. Canty, with each successive telephone call, informed the 911 operator of his wife's deteriorating condition. Each time he was told to remain calm, that help was "on the way" and that an ambulance had been dispatched. At no time was Mr. Canty told there would be a delay. Thus, he made no effort to seek alternative assistance. As for the argument that the court should have submitted the issue of reliance to the jury, no such request was made and, thus, the issue is unpreserved for appellate review.

Finally, the jury award of $350,000 to Marlene Canty for

"shock, fright or emotional distress" was not based, as Health and Hospitals argues, on the suffering from viewing her baby's plight, which claim had already been dismissed because she was not within the "zone of danger", but, rather, on Mrs. Canty's shock and fright during the time that she, herself, was neglected as a result of Health and Hospitals' delay in responding. Nor, given the testimony that Mrs. Canty, lay shocked, frightened and confused with the baby encased in the amniotic sac with the placenta and umbilical cord attached between her legs in a bed of blood, without any knowledge of what to do to protect herself, do we find the jury's award of $350,000 for her emotional injuries to be excessive. Thus, the judgment is affirmed. Concur—Sullivan, J. P., Carro, Milonas and Rosenberger, JJ.