[710 NYS2d 154]

MITCHELL MILLER, an Infant, by DAVID MILLER, His Father and
Natural Guardian, Plaintiff, and STACEY MURPHY, Appel-
lant, v MARK CHALOM, Respondent.

Third Department, June 29, 2000

APPEARANCES OF COUNSEL

*Cappiello, Hofmann & Katz,* New York City (*Edward M. Katz* of counsel), for appellant.

*Carter, Conboy, Case, Blackmore, Napierski & Maloney, P. C.,* Albany (*Christine M. Napierski* of counsel), for respondent.

## OPINION OF THE COURT

CARPINELLO, J.

This lawsuit stems from events surrounding the birth of plaintiff Mitchell Miller on November 1, 1995. During the child's birth, while performing an episiotomy[1] on the mother, plaintiff Stacey Murphy, defendant accidentally cut off a portion of the child's left index finger. In the second cause of action in this medical malpractice suit, Murphy seeks to recover personally for the "psychological pain and suffering" she sustained as a result of the injury to the child. Murphy claims that Supreme Court erroneously dismissed this claim. We disagree.

Defendant sought dismissal of the second cause of action on grounds that Murphy did not sustain an actual physical injury as a result of the episiotomy, that her physical well-being was never in danger and that she was not contemporaneously aware of the injury to the child. In response, it was asserted that Murphy was immediately aware of the child's injury and that the episiotomy constituted an injury to her. There are, in essence, two separate theories of liability being debated by the parties concerning Murphy's attempt to recover for emotional injuries, namely, recovery by a mother for emotional injuries sustained as a result of injury to her child during childbirth and recovery for emotional injuries as a bystander under the "zone of danger" rule. We address each seriatim.

The first theory is controlled by *Tebbutt v Virostek* (65 NY2d 931) and its progeny whereby it has become firmly established that, absent an independent physical injury to the mother, she may not recover for emotional damages caused by the negligence of a physician resulting in the death or injury to her child either in utero or postpartum (*see, Saguid v Kingston Hosp.,* 213 AD2d 770, 771-772, *lv dismissed* 87 NY2d 861, *lv dismissed and denied* 88 NY2d 868; *Scott v Capital Area Community Health Plan,* 191 AD2d 772, 773, *lv denied* 82 NY2d

---

1. An episiotomy is a medical procedure performed during childbirth whereby the perineum is cut with scissors to make a larger opening for the baby to be delivered.

656; *Kakoullis v Harri H. Janssen, M.D., P. C.*, 188 AD2d 769, 770; *Hayes v Record*, 158 AD2d 874; *Sceusa v Mastor*, 135 AD2d 117, 119, *lv dismissed* 72 NY2d 909; *Farago v Shulman*, 104 AD2d 965, *affd on mem below* 65 NY2d 763; *Friedman v Meyer*, 90 AD2d 511, *appeal dismissed* 59 NY2d 763; *see also, Vaccaro v Squibb Corp.*, 52 NY2d 809). Thus, in this case, the viability of Murphy's claim for emotional damages hinges on whether she is "able to prove that [she] suffered physical injury as a result of the malpractice that allegedly caused [the child's injury]" (*Saguid v Kingston Hosp.*, *supra*, at 772). No allegations have been made nor proof tendered that Murphy sustained a medically cognizable physical injury beyond that naturally attendant to childbirth as a result of defendant's negligent conduct (*cf., Stiles v Sen*, 152 AD2d 915).

Nor do we find, based upon language contained in *Bauch v Verrilli* (146 AD2d 835), that the episiotomy *must* be considered an injury to Murphy because the child was injured during the course thereof. There can be no doubt that the performance of the episiotomy was the occasion for the child's injury in that, without the need for same, defendant would not have been wielding scissors in the birth canal. However, the episiotomy was not its cause. Rather, defendant's use of the scissors caused two results: the intended cutting of Murphy's perineum and the unintended severance of the child's finger. There is no medical evidence that the episiotomy itself, that is, the resulting cut in the perineum, was the cause of an injury to Murphy (*compare, Stiles v Sen, supra*; *Wittrock v Maimonides Med. Ctr.—Maimonides Hosp.*, 119 AD2d 748, *lv denied* 68 NY2d 607; *Farago v Shulman, supra*). Accordingly, under the rationale of the aforementioned cases, the second cause of action was properly dismissed.

The parties also debate the elements of a closely analogous theory of tort liability, negligent infliction of emotional distress, commonly referred to as the "zone of danger" rule. Specifically, Murphy claims that she can recover emotional damages by establishing a physical injury to herself contemporaneously with witnessing the injury to the child *or* by establishing that she was within the "zone of danger." The "zone of danger" rule can be stated as follows: "[w]here a defendant negligently exposes a plaintiff to an unreasonable risk of bodily injury or death, the plaintiff may recover, as a proper element of his or her damages, damages for injuries suffered in consequence of the observation of the serious injury or death of a member of his or her immediate family—assuming, of course, that it is

established that the defendant's conduct was a substantial factor bringing about such injury or death" (*Bovsun v Sanperi*, 61 NY2d 219, 230-231). Thus, recovery for consequential emotional damages under the "zone of danger" rule requires a showing that defendant's negligent conduct exposed Murphy to an *unreasonable risk of bodily harm* (as opposed to an *actual* independent physical injury) and that she had a contemporaneous awareness of the injury to the child.

Given the evolution of decisional authority in the *Tebbutt v Virostek (supra)* line of cases which requires *more* than mere exposure to bodily harm but actual physical injury to a mother seeking emotional damages stemming from an injury to her child during childbirth, it appears that the "zone of danger" rule is simply inapplicable to birth cases.[2] Notably, the First, Second and Fourth Departments have each found that the "zone of danger" rule is inapplicable in actions arising out of fetal injuries unaccompanied by independent physical injury to the mother (*see, Guialdo v Allen*, 171 AD2d 535, 537 ["the extension of the reasoning set forth in *Bovsun* * * * to actions arising out of fetal injury has been explicitly rejected"]; *Sceusa v Mastor*, 135 AD2d 117, 119-120, *supra* ["zone of danger" rule is inapplicable to "cases seeking damages for emotional distress caused by medical malpractice which has resulted in harm to an infant either prior to or at the time of delivery"]; *Burgess v Miller*, 124 AD2d 692, 693-694 ["the decisional law must be considered to have impliedly rejected *Bovsun*-type causes of action grounded upon fetal injuries unaccompanied by independent physical injury to the mother"]).

Even if the "zone of danger" rule was applicable, there is simply no evidence that Murphy was *exposed* to an unreason-

---

2. As noted in *McBride v Brookdale Hosp. Med. Ctr.* (130 Misc 2d 999, 1007), the "disposition not to apply the zone-of-danger rule" in the context of a claim to recover for emotional distress as a result of injury to a baby during childbirth is reflected in *Howard v Lecher* (42 NY2d 109). In *Howard v Lecher (supra)*, the parents of a child who was born with Tay-Sachs disease and ultimately died from it sought damages for mental distress. After noting that the parents suffered no injury other than anguish of observing their child suffer as a result of the defendant's alleged negligence, the Court of Appeals stated: "Analogous, indeed stronger since the injuries would directly result from the tortious conduct of the doctor, would be a case in which the doctor, in delivering the infant from the mother's womb, committed an act of negligence causing frightful injuries to the child, but in no manner physically injuring the parent. Were that parent to suffer psychic injury as a result of the doctor's misfeasance, it is clear that there could be no recovery * * *. Nor can the parents recover in the present case" (*id.*, at 112-113 [citation omitted]).

able risk of bodily harm during labor and delivery, despite the obvious injury to the child. The episiotomy, a medical procedure used routinely during the labor and delivery process, did not expose Murphy to an unreasonable risk of physical injury (*cf.*, *Stiles v Sen*, 152 AD2d 915, *supra*). Said differently, while it was undoubtedly the need to perform an episiotomy on Murphy which resulted in defendant's negligent act against the child, the episiotomy procedure itself did not expose Murphy to an unreasonable risk of bodily harm.

CARDONA, P. J., MERCURE, SPAIN and ROSE, JJ., concur.

Ordered that the order is affirmed, without costs.