■ DEBRA A. FAHEY et al., Appellants, v ANTHONY C. CANINO et al., Respondents. [758 NYS2d 708] —Cardona, P.J. Appeal from an order of the Supreme Court (Rumsey, J.), entered March 7, 2002 in Broome County, which granted defendants' motion for summary judgment dismissing the complaint.

In January 1999, plaintiff Debra Ann Fahey (hereinafter plaintiff), then approximately two months pregnant, began

obstetrical care with defendant OBGYN Health Care Associates, P.C. At her initial appointment, defendant Anthony C. Canino, a partner at OBGYN, discovered, via an ultrasound, the absence of a fetal heartbeat. Subsequently, Canino performed dilation and curettage surgery (hereinafter D & C) to remove the demised fetus.

In August 1999, plaintiff again sought obstetrical care from OBGYN and was advised by Canino that she was pregnant with twins. Plaintiff was scheduled for appointments at three-week intervals. At her regularly scheduled appointment on October 28, 1999, plaintiff met with defendant Patrick F. Ruggiero, another partner of OBGYN, and complained of lower abdominal pain and intermittent abdominal cramping. Ruggiero performed an ultrasound and attributed plaintiff's pain to the positioning of one of the fetuses against her sciatic nerve. Two days later, with her symptoms worsening and exacerbated by vomiting, plaintiff spoke to Canino who told her, in light of Ruggiero's examination, that her symptoms were probably a result of her sciatic nerve and the vomiting was likely attributable to something she ate. He advised her to lie down and indicated that she could not be in labor at that stage of her pregnancy—18 weeks. Thereafter, while in the bathroom, plaintiff felt her water break and delivered one of the twins into her hand. She and the infant—still attached to its umbilical cord—were rushed to the hospital, where she spontaneously delivered the second twin. Both infants died and plaintiff underwent a D & C to remove an unexpelled placenta.

In August 2000, plaintiff successfully delivered a six-week premature daughter with the assistance of another medical group. Later that month, plaintiff and her husband, derivatively, commenced this medical malpractice action against Canino, Ruggiero and OBGYN seeking damages for her physical and emotional injuries resulting from the loss of the twins. Following joinder of issue and discovery, Supreme Court granted defendants' motion for summary judgment finding that plaintiffs failed to establish that plaintiff suffered a physical injury, independent of childbirth and, therefore, could not recover damages for resulting emotional distress. Plaintiffs appeal.

It is settled law "that, absent an independent physical injury to the mother, she may not recover for emotional damages caused by the negligence of a physician resulting in the death or injury to her child either in utero or postpartum" (*Miller v Chalom*, 269 AD2d 37, 38 [2000]; *see Tebbutt v Virostek*, 65 NY2d 931 [1985]; *Parsons v Chenango Mem. Hosp.*, 210 AD2d

847 [1994], *lv dismissed* 86 NY2d 778 [1995]; *Scott v Capital Area Community Health Plan*, 191 AD2d 772 [1993], *lv denied* 82 NY2d 656 [1993]; *Farago v Shulman*, 104 AD2d 965 [1984], *affd on mem below* 65 NY2d 763 [1985]). Here, in an attempt to distinguish this case from a childbirth case, plaintiffs argue, among other things, that plaintiff endured intense back pain, abdominal cramping, pressure and had to undergo a D & C as a result of defendants' failure to diagnose and treat her incompetent cervix[1] and/or recognize her premature labor. Plaintiffs note that the medical care provided during plaintiff's subsequent pregnancy, which included a cervical cerclage,[2] resulted in the successful birth of her daughter. She maintains, therefore, that she suffered emotional distress because of what personally happened to her as distinct from the plight of her twins. In support of her position, plaintiffs rely upon *Ferrara v Bernstein* (179 AD2d 79 [1992], *affd* 81 NY2d 895 [1993]) and *Canty v New York City Health & Hosps. Corp.* (158 AD2d 271 [1990]). We do not find these cases determinative.

In *Ferrara*, the plaintiff was not treated for pregnancy or childbirth. She went to the defendants for an abortion. Thereafter, she suffered a spontaneous miscarriage at a time when she had no reason to believe that she was still pregnant, having never been told by the defendants that the abortion was incomplete. Thus, as the First Department reasoned, the "plaintiff's emotional distress [did] not derive so much as from what happened to the fetus, but rather from what happened to *her* in undergoing a spontaneous miscarriage" (*Ferrara v Bernstein, supra* at 85 [emphasis in original]; *see Scott v Capital Area Community Health Plan, supra* at 775).

In *Canty*, the plaintiff, who was seven months pregnant, gave birth at home after the defendant's delay in responding to a succession of 911 calls. Each time, the plaintiff's husband was informed to remain calm in that help was on the way and an ambulance had been dispatched. The plaintiff lay neglected and helpless in a bed of blood with the baby encased in the amniotic sac with the placenta and umbilical cord attached between her legs for approximately 1½ hours from the time of the first 911 call. The baby died 24 hours later at the hospital. The First Department found that the plaintiff suffered shock and fright as a result of the defendant's delay in responding, not as a result of viewing her infant's plight.

---

1. An "incompetent cervix" lacks the ability to remain closed throughout the entire pregnancy, resulting in premature delivery.

2. In this procedure, the cervix is sutured so it remains closed until delivery.

In both *Ferrara* and *Canty*, the defendants breached duties owed directly to the plaintiffs which caused their emotional distress (*see generally Martinez v Long Is. Jewish Hillside Med. Ctr.*, 70 NY2d 697 [1987]). Here, however, plaintiff sought treatment from defendants for her pregnancy. Their breach, if any, was of the duty owed to provide her twins with proper prenatal care. Based upon our review of this record, we conclude that the emotional distress for which plaintiff seeks recovery derives from her concern over what happened to the fetuses and not for a breach of any duty that defendants owed to her. Therefore, in order for plaintiff to recover damages under the circumstances presented herein, she must demonstrate that she suffered an independent physical injury as required by *Tebbutt v Virostek* (65 NY2d 931, 932 [1985], *supra*) and its progeny. Plaintiff's back pain, abdominal cramping and pressure, naturally associated with the labor of childbirth albeit premature, are not physical injuries (*see e.g. Bubendey v Winthrop Univ. Hosp.*, 151 AD2d 713 [1989]). Furthermore, unrefuted medical evidence establishes that the D & C performed to remove the remaining placenta following the births is a medical procedure and cannot be considered a physical injury to plaintiff (*cf. Sceusa v Mastor*, 135 AD2d 117 [1988], *lv dismissed* 72 NY2d 909 [1988]). Notably, plaintiffs do not contend that the D & C was performed negligently. Because plaintiffs have failed to tender any evidence that plaintiff sustained a medically cognizable physical injury beyond that naturally attendant to childbirth, this cause of action falls within those cases which preclude the mother's recovery of damages for emotional distress resulting from the death of a child in utero or postpartum (*see Miller v Chalom*, 269 AD2d 37 [2000], *supra*). Accordingly, in view of the present status of the law, the cause of action for emotional distress was properly dismissed, as was the derivative action on behalf of plaintiff's husband (*see Parsons v Chenango Mem. Hosp.*, 210 AD2d 847, 848 [1994], *supra*).

We have considered plaintiffs' remaining contentions and find that they lack merit.

Spain, Carpinello and Kane, JJ., concur.

Lahtinen, J. (dissenting). I respectfully dissent. Concededly, the lines of liability in this troublesome and emotionally compelling area of law are not delineated with acuity and have resulted in many divided decisions (*see Tebbutt v Virostek*, 65 NY2d 931 [1985] [three judge plurality, one judge concurring on constraint; two separately penned dissents]; *see also Lynch v Bay Ridge Obstetrical & Gynecological Assoc.*, 72 NY2d 632

[1988] [divided court]; *Martinez v Long Is. Jewish Hillside Med. Ctr.*, 70 NY2d 697 [1987] [divided court]; *Vaccaro v Squibb Corp.*, 52 NY2d 809 [1980] [divided court]). Under prevailing precedent, an act that directly injures only the unborn child without a separate injury to the mother does not give rise to a viable cause of action by the mother (*see Tebbutt v Virostek, supra*; *Miller v Chalom*, 269 AD2d 37 [2000]). Where, however, the alleged act or omission breaches a duty running to the pregnant woman and results in injury to her, she may pursue a legal remedy for such conduct (*see Lynch v Bay Ridge Obstetrical & Gynecological Assoc., supra*; *Canty v New York City Health & Hosps. Corp.*, 158 AD2d 271 [1990]).

Here, defendants were providing not only prenatal care to the unborn children of plaintiff Debra Ann Fahey (hereinafter plaintiff), but also were providing care to the expectant mother for the risks and complications that accompany pregnancy and childbirth.* Plaintiffs allege that defendants breached their duty to plaintiff by failing to diagnose a complication in her pregnancy and further failing to take proper action when advised of her symptoms. As a result, plaintiff, after several days of pain, suffered the traumatic and dangerous experience of suddenly and unexpectedly giving birth to a child into her own hands while in the bathroom of her home. Thereafter, she underwent a surgical procedure, which she alleges would not have been necessary had she received proper care. Supporting her contentions are the opinions of her expert, who stated in his affidavit that defendants failed to properly diagnose plaintiff's condition despite "prominent heralding signs of a potential cervical incompetence" and, later, when notified of plaintiff's continuing symptoms, defendants "departed from good and accepted medical care when they failed to advise [plaintiff] to go immediately to the hospital." The expert further opined that the surgical procedure that plaintiff underwent "may not have been necessary had her pregnancy been handled within the acceptable standard of care."

Viewed in the light most favorably to plaintiffs, the proof is sufficient, in my opinion, to raise factual issues as to whether defendants breached a duty owed directly to plaintiff which caused her to sustain compensable injuries. Plaintiffs are not asserting emotional distress for injuries inflicted directly upon the unborn children. Plaintiffs allege a breach of a duty owed by defendants to plaintiff to provide her with competent medi-

---

* Indeed, such risks and complications continue to be a leading cause of mortality among young women in many areas of the world (*see e.g.* UNICEF, *The Progress of Nations 1997*, at 48).

cal care regarding her pregnancy (*cf. Lynch v Bay Ridge Obstetrical & Gynecological Assoc., supra* at 635). In addition to having a potentially unnecessary surgery as a result of the alleged breach, the injury she suffered by unexpectedly delivering a child at home—after being assured that she was merely suffering pain caused by the position of a fetus and from something she ate—is traumatic and dangerous in the same fashion as delivering a child after a botched abortion (*see Ferrara v Bernstein*, 179 AD2d 79 [1992], *affd* 81 NY2d 895 [1993]). I would therefore reverse and deny defendants' motion for summary judgment. Ordered that the order is affirmed, with costs.