**Victor J. CIPOLLA and Susan E. Martin, Plaintiffs,**

**v.**

**The COUNTY OF RENSSELAER, County of Rensselaer Executive's Office, Henry Zwack, individually and as County Executive for the County of Rensselaer, Joseph Cybulski, individually and as Deputy County Executive for the County of Rensselaer, Daniel Ehring, individually and as Deputy County Attorney for the County of Rensselaer, Jack Madden, individually and in his capacity as Stop DWI Coor-**

dinator for the County of Rensselaer, John Doe, an individual whose name is unknown to plaintiffs individually and in his capacity as an official of the County of Rensselaer, Jane Doe, an individual whose name is unknown to plaintiffs, individually and in her capacity as an official of the County of Rensselaer, and ABC Department, an office or department of the County of Rensselaer whose identity is unknown to the plaintiffs, Defendants.

No. 99–CV–1813.

United States District Court, N.D. New York.

Jan. 11, 2001.

Joseph R. DeMatteo, New York, NY, Jeffrey L. Bernfeld, New York, NY, for Plaintiffs.

Dreyer Boyajian LLP, Albany, NY, for Defendants, William J. Dreyer, Daniel J. Stewart, Of Counsel.

## MEMORANDUM—DECISION & ORDER

McAVOY, District Judge.

Presently before the Court is Plaintiffs' motion for reconsideration pursuant to

FED. R. CIV. P. 59(e) of this Court's September 14, 2000 Memorandum–Decision & Order, *Cipolla v. County of Rensselaer,* 113 F.Supp.2d 305 (N.D.N.Y.2000). Defendants argue that the motion for reconsideration is untimely because it was filed more than ten (10) days after entry of judgment in violation of FED. R. CIV. P. 59(e) and Local Rule 7.1(g). *See* N.D.N.Y.L.R. 7.1(g). However, because Plaintiffs move for reconsideration of a final, dispositive, order the motion falls within FED. R. CIV. P. 60 rather than FED. R. CIV. P. 59(e). *See, e.g., Alvarez v. American Airlines, Inc.,* 2000 WL 145746, at *1 (S.D.N.Y. Feb.8, 2000) (quoting 12 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 60.23 (3d ed.1999)). Because Rule 60(b) motions must be made within a "reasonable time," this motion is timely. *See* FED. R. CIV. P. 60(b).

 Rule 60 "prescribes procedures by which a party may seek relief from a final judgment. Properly applied, the rule preserves a balance between serving the ends of justice and ensuring that litigation reaches an end within a finite period of time." *Paddington Partners v. Bouchard,* 34 F.3d 1132, 1144 (2d Cir.1994) (citing *House v. Secretary of Health & Human Servs.,* 688 F.2d 7, 9 (2d Cir.1982)); *see also Nemaizer v. Baker,* 793 F.2d 58, 61 (2d Cir.1986); *Bankers Mortgage Co. v. United States,* 423 F.2d 73, 77 (5th Cir.), *cert. denied,* 399 U.S. 927, 90 S.Ct. 2242, 26 L.Ed.2d 793 (1970). Therefore, in deciding a Rule 60(b) motion "a court must balance the policy in favor of hearing a litigant's claims on the merits against the policy in favor of finality." *Kotlicky v. United States Fidelity & Guar. Co.,* 817 F.2d 6, 9 (2d Cir.1987). Since Rule 60(b) allows extraordinary judicial relief, it is invoked only upon a showing of exceptional circumstances, *see Employers Mutual Casualty Co. v. Key Pharmaceuticals,* 75 F.3d 815, 824–25 (2d Cir.1996), and is addressed to the sound discretion of the trial court.

It is well-settled that Rule 60(b) is not intended to substitute for a direct appeal from an erroneous judgment. *See Ackermann v. United States,* 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950); *Matarese v. LeFevre,* 801 F.2d 98, 106–07 (2d Cir. 1986), *cert. denied,* 480 U.S. 908, 107 S.Ct. 1353, 94 L.Ed.2d 523 (1987). Therefore, a district court may not vacate an order under Rule 60(b) where "[n]o additional claims are advanced" and where movants "simply argue on the same facts that there are 'extraordinary circumstances' justifying the exercise of the district court's equitable powers." *Cruickshank & Co. v. Dutchess Shipping Co.,* 805 F.2d 465, 469 (2d Cir.1986); *see also Competex, S.A. v. LaBow,* 783 F.2d 333, 335 (2d Cir.1986) ("Rule 60(b) is not a substitute for appeal. LaBow may not relitigate the bases for the enforcing judgment entered by Judge Werker."); *Matura v. U.S.,* 189 F.R.D. 86, 90 (S.D.N.Y.1999).

 Rule 60(b) authorizes the vacating of final judgments in six specific circumstances: "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence ...; (3) fraud..., misrepresentation, or other misconduct of an adverse party; (4)[if] the judgment is void; (5)[if] the judgment has been satisfied, released... or (6)[for] any other reason justifying release from the operation of the judgment." Plaintiffs' reconsideration motion cites to new evidence relevant to the Court's prior decision. Thus, both the interests of justice and judicial economy compel the Court to invoke its discretionary power to grant Plaintiffs' motion for reconsideration in part. The Court will reconsider its prior decision in light of the new evidence presented by Plaintiffs in support of their motion for reconsideration.[1] Accordingly,

---

1. Plaintiffs move for reconsideration on four distinct grounds: (1) the Court overlooked factual matters and controlling authority regarding the stage of discovery in this matter; (2) the Court *sua sponte* addressed the issue of probable cause; (3) the Court overlooked

the Court's September 14, 2000 is VACATED and SUPERSEDED in its entirety by the following decision.

## I. Background

Plaintiffs Victor Cipolla and Susan Martin are former employees of Rensselaer County (the "County") whose claims arise out of their criminal prosecution for official misconduct.[2] Defendant Henry Zwack was the elected County Executive at the time of Plaintiffs' prosecution; Steve Madden and Joseph Cybulski were employees of the County;[3] and Defendant Daniel Ehring was a Deputy County Attorney,[4] who served as a contact between the County and the District Attorney's office throughout the investigation and prosecution. A brief outline of the events leading up to this prosecution follows.

Zwack was elected as County Executive in late 1995 and took office on January 1, 1996. Prior to his election, Zwack served on the County Legislature. During the period after Zwack's election, but prior to his taking office, the individual Defendants and Plaintiffs worked with the outgoing County Executive and administration to facilitate a smooth transition between administrations. Zwack wanted to make numerous organizational changes in the County government. Because the changes needed to be made while Zwack was a county legislator, they had to be signed by the outgoing County Executive.[5] The outgoing County Executive made certain demands on Zwack, including the continued employment of five County employees, in exchange for his agreement to sign the organizational changes into law. One of these employees was Dirk Van Ort.

Because the changes Zwack made prior to taking office included elimination of Van Ort's position[6] and the department from which that position was funded, it became necessary to find a new position for Van Ort. Zwack reassigned Van Ort to the Department of Emergency Services, run by David Cooke. Cooke objected to this placement and Zwack then assigned Van Ort to Cipolla's Department, BRIS. Although Cipolla objected to this placement, Zwack refused to reassign Van Ort.[7]

factual matters and controlling authority regarding the evidentiary burden Plaintiffs were required to meet to withstand summary judgment on the issue of probable cause; and (4) Plaintiffs have obtained new evidence relevant to the prior decision that was not available at the time Plaintiffs submitted their opposition. The first three grounds are not appropriate grounds for reconsideration as they essentially detail Plaintiffs' disagreement with the prior decision. These are arguments targeted at appeal and inappropriate for this Court to consider on a motion for reconsideration. Accordingly, the Court will consider only the fourth ground, new evidence, in the ensuing discussion.

2. Defendant Henry Zwack appointed Plaintiffs Cipolla and Martin to the positions of department head of the Bureau for Research and Information Services ("BRIS") and Assistant for Labor Relations and Personnel, respectively.

3. Zwack appointed Defendant Cybulski as Deputy County Executive and Commissioner of Aging, Veterans, and Youth and Madden was retained as the Stop DWI Coordinator.

4. The County hired Ehring in 1996.

5. During this time, the political make up of the County Legislature favored the republican party 10–9. The republican majority would disappear when Zwack, a republican, became County Executive. Thus, in order to get his organizational changes approved by the republican legislature, the changes had to be put to vote before Zwack left.

6. It appears that Van Ort was an "on call" employee for the outgoing administration. He did not come to the office every day; rather, he attended certain meetings and performed other tasks outside of the office involving emergency services.

7. According to Zwack's grand jury testimony, although Cipolla complained about Van Ort's placement, there was work in BRIS which Van Ort could do. *See* Zwack Testimony, July 22, 1997 Grand Jury Tr. at 36–37 ("Victor came in and complained about Dirk Van Ort, and my response was something to the effect of, 'You wanted to be a department head. You wanted to be a manager... he is your employee. You've got work.'").

It does not appear that anyone was given any instructions regarding how to use Van Ort and Van Ort was given little, if any, job direction.[8] Throughout 1996, Van Ort's County employment continued. He did not report to work at the County offices and was not assigned work by Plaintiffs or Defendants, but continued to submit time cards, which were signed by himself and, in some cases, Cipolla. During this period, Cipolla continued to sign payroll authorization sheets for Van Ort's work.[9] At Martin's direction the payroll authorizations were processed, despite certain irregularities including Van Ort's submission of a number of time cards requesting back pay. Plaintiffs do not dispute the above facts. However, they allege that they signed and processed Van Ort's time cards and the related payroll authorization sheets under protest and pursuant to direct instructions from Zwack. *See* Cipolla Aff.; Martin Aff.

Plaintiffs allege that Zwack held several meetings, attended by all of the parties hereto with the exception of Ehring, to resolve the issue of Van Ort's back pay request at which they protested paying Van Ort any back pay.

Cipolla acknowledges that, technically speaking, he was Van Ort's supervisor. There is dispute as to who was responsible for actually supervising Van Ort and assigning him work. Plaintiffs allege that Zwack specifically told Cipolla not to contact Van Ort, that Madden was responsible for finding Van Ort work, and that Cipolla was instructed to sign Van Ort's time cards. Defendants, on the other hand, contend that Cipolla was in charge of finding Van Ort work and supervising him. In contrast to both of the above view points, Van Ort testified before the grand jury that Martin was his contact person who he expected to assign his work. *See* Van Ort Testimony, Sept. 3, 1997 Grand Jury Tr. at 73.

In 1996, Zwack agreed to place Van Ort on an early retirement list and Van Ort retired in December 1996. In late 1996, Zwack asked for Plaintiffs' resignations. In December 1996, Cipolla resigned. Martin refused and, thus, was terminated.

In or about February 1997, the news media began investigating and reporting a series of stories regarding the alleged improprieties committed by the Zwack administration. The stories included that of Van Ort, an alleged "no show employee." Public statements of some of the Defendants to the media indicated that Cipolla was responsible for supervising and finding work for Van Ort.

The County District Attorney's office convened a grand jury in 1997 to investigate allegations that Van Ort was a no show employee of the County. The grand jury heard testimony from Christina Mahoney, the County Director of Personnel as of April 28, 1997; Jennifer Fitzpatrick, the County employee in charge of inputting the County payroll in 1996; Manette Eddy, the Deputy Commissioner of BRIS in 1996; David Cooke, the County's Director of Public Safety in 1996;[10] Rebecca Syrotinski, an address verifier for the County in 1996;[11] Trudy Clayton, the secretary to BRIS in 1996; Zwack; Cybulski; Madden; Lisa Sanders, an address verifier for the County in 1996; Kathleen Van Ort,

---

8. Van Ort testified before the grand jury that Zwack and Martin told him to continue to do the things he had done before "firematically." Van Ort·Testimony, Sept. 3, 1997 Grand Jury Tr. at 75.

9. County employees submit time cards each payroll period, which should be signed by both the employee and that employee's supervisor. Each County department has a payroll clerk. That clerk fills out the information on the time authorization sheets, which are signed by the department heads and then input (by another department) for payroll. *See* Fitzpatrick Testimony, July 9, 1997 Grand Jury Tr. 80–85.

10. Cooke's department was responsible for emergency services.

11. Address verifiers verify addresses for the County 911 emergency system.

Dirk Van Ort's wife; Dirk Van Ort; Marion Gould, secretary to the County Executive; and Barbara Manoni, a County benefits representative.

The grand jury voted to subpoena Plaintiffs who elected not to waive their immunity and, thus, did not testify. The grand jury also reviewed documentary evidence including, *inter alia*, Van Ort's time cards, the payroll authorization sheets signed by Cipolla, and letters written to Van Ort regarding his employment status.

The grand jury elected to hear legal charges regarding potential criminal indictments of Van Ort, Martin, Cipolla, and Zwack. The grand jury was charged and, after deliberation, indicted Plaintiffs for official misconduct and Van Ort for second degree offering of a false instrument and falsifying business records. The charges against Plaintiffs were based on the grand jury's belief that Plaintiffs were responsible for finding work for Van Ort and or supervising this work, that they did not find this work, and that they signed and processed Van Ort's time cards with knowledge that Van Ort had not performed work for the County and, in doing so, concealed the fact that they had not found Van Ort work. *See* Sept. 4, 1997 Grand Jury Tr. at 157, 161. The grand jury further found that Plaintiffs benefitted from the above actions by retaining their County jobs. *See id.* The grand jury voted against indicting Zwack.

Van Ort pled guilty to one charge of offering a false instrument and was sentenced to 100 hours of community service and fined $1,000.00. Plaintiffs went to trial on the misdemeanor charges. On November 30, 1998, a jury acquitted Plaintiffs of all charges.

Plaintiffs allege that Zwack, Madden, and Cybulski testified falsely before the grand jury insofar as they minimized their involvement with the Van Ort matter and testified that Van Ort was assigned to BRIS and that Cipolla (not Madden) was solely responsible for finding him work, Zwack asked Cipolla to find Van Ort work,

Van Ort was an on call employee who was not given regular work assignments, and that Zwack had not met with Van Ort to discuss work assignments or told anyone (specifically Plaintiffs) that Van Ort was conducting field work on his behalf.

On November 29, 2000, a grand jury indicted Zwack for first degree perjury stemming from his testimony regarding the Van Ort matter at the grand jury proceedings, Plaintiffs' subsequent criminal trial, and pretrial examinations in this case.

On October 27, 1999, Plaintiffs commenced this action pursuant to 42 U.S.C. § 1983 ("Section 1983"), alleging causes of action for violations of their right to due process of law as protected by the Fourteenth Amendment (defamation), malicious prosecution, and conspiracy to present false evidence and testimony before the grand jury and at trial. Plaintiffs further allege state law claims for: (1) malicious prosecution; (2) defamation; (3) the intentional and negligent infliction of emotional distress; and (4) prima facie tort and a claim under Local Law 5 for legal fees.

Presently before the Court is Defendants' motion pursuant to FED. R. CIV. P. 8 or, in the alternative, FED R. CIV. P. 12, seeking dismissal of the Complaint in its entirety.

## II. Discussion

### A. Federal Rule of Civil Procedure 8

Defendants first move to dismiss Plaintiffs' Complaint pursuant to FED. R. CIV. P. 8. Rule 8 provides that a complaint shall contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must disclose sufficient information to permit the defendant "to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery." *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir.1991). Where a complaint alleges claims under 42

U.S.C. § 1983, it must be organized such that a preliminary decision on the issue of qualified immunity is feasible. *See Connell v. Signoracci*, 153 F.3d 74 (2d Cir. 1998).

Here, Defendants allege that the Complaint, which is 33 pages in length with 89 substantive paragraphs, is defective because it combines the allegations against each defendant and, thus, frustrates a determination of qualified immunity. The Complaint, however, appears to allege that all the Defendants engaged in certain conduct. In such cases, it is unnecessary to put forth a separate paragraph alleging that each Defendant engaged in the same conduct. Accordingly, the Court finds that the Complaint satisfies Rule 8 and does not impede a timely decision on qualified immunity.

Defendants next argue that Plaintiffs' conspiracy claims should be dismissed pursuant to FED. R. CIV. P. 8 because they are

conclusory. This argument is more appropriately addressed under FED. R. CIV. P. 12 or 56 as it involves Plaintiffs' alleged failure to state a claim, rather than the structure of Plaintiffs' pleadings. Accordingly, the Court will address this argument below.

**B. Conversion to Summary Judgment** [12]

■ Pursuant to FED. R. CIV. P. 12(c), "[i]f, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment … and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." In the present matter, Defendants, the original moving parties, submitted materials outside of the pleadings.[13] In response, Plaintiffs also

---

12. In their motion for reconsideration, Plaintiffs argue that the Court erroneously failed to address their argument that, due to the early stage in the case and concomitant lack of discovery, summary judgment was premature. *See* Pl. Mem. of Law in Support of Recon. at 4.

In *Crystalline H2O, Inc. v. Orminski*, 105 F.Supp.2d 3, 7–8 (N.D.N.Y.2000), this Court recognized that summary judgment may be premature where parties had not had an opportunity to commence discovery. Although Plaintiffs' opposition papers touched on this argument (the amount of discovery was further detailed in the Bernfeld Aff., *see* Dkt. No. 41), Plaintiffs explicitly confirmed that the lack of discovery had not prejudiced their opposition to the instant motion. *See* Pl. Opp. Mem. of Law ("Despite the limited discovery had thus far, Plaintiffs have submitted evidence which, at a minimum, raises serious questions of fact which preclude summary judgment."). In light of this statement, it was not a "mistake" within the meaning of Rule 60(b) to decline to dismiss Defendants' summary judgment motion as premature. *See, e.g., Competex, S.A.*, 783 F.2d at 335 ("Rule 60(b) is not a substitute for appeal.").

To the extent Plaintiffs argue on reconsideration that the Court "could have" considered the Bernfeld Affidavit as a Rule 56(f) affidavit "[a]lthough somewhat general and not specifically styled as such," Pl. Mem. of Law in Supp. of Recon. at 7, Plaintiffs misconstrue

their burden on a reconsideration motion and ignore the specific standards set forth by the Second Circuit on this issue. In this Circuit, a Rule 56(f) must contain a detailed statement of "(1) what facts are sought [to resist the motion] and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts," *Hudson River Sloop Clearwater, Inc. v. Department of Navy*, 891 F.2d 414, 422 (2d Cir.1989); *see also Gurary v. Winehouse*, 190 F.3d 37, 43 (2d Cir.1999), and "the failure to file such an affidavit is fatal to a claim such as plaintiff makes here even if the party resisting the motion for summary judgment alluded to a claimed need for discovery in a memorandum of law." *See Gurary*, 190 F.3d at 43 (citing *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137 (2d Cir.1994)). The Bernfeld Affidavit did not address the *Hudson/Sloop* factors and, thus, it would have been error to construe it as such. Nevertheless, as Plaintiffs did not make a Rule 56(f) argument or supply the necessary affidavit in opposition to Defendants' motion for summary judgment, it would be clearly erroneous for this Court to reconsider its prior decision on this ground.

13. Defendants also included a statement of material facts, pursuant to Local Rule 7.1(a)(3), as is required for a summary judg-

submitted materials outside of the pleadings, noted that Defendants' motion "blend[ed] principals applicable to motions to dismiss and motions for summary judgment," Pl. Mem. of Law at 2, and addressed the summary judgment standard. *See id.* at 9. In their reply papers, Defendants treat their motion as a motion for summary judgment. Accordingly, both parties are on notice that the Court could treat this motion as a motion for summary judgment and, thus, could consider materials submitted outside the pleadings. Because both parties have had a full and fair opportunity to present and, in fact, have presented, materials pertinent to a Rule 56 motion, the Court will treat the pending motions as if made pursuant to Rule 56.[14] *See In re G. & A. Books, Inc.,* 770 F.2d 288, 295 (2d Cir.1985), *cert. denied,* 475 U.S. 1015, 106 S.Ct. 1195, 89 L.Ed.2d 310 (1986); *Citizens Accord Inc. v. Town of Rochester, New York,* 2000 WL 504132 (N.D.N.Y. Apr.18, 2000).

### C. Summary Judgment Standard

This Court has set forth the applicable standard for summary judgment in numerous reported decisions, *see, e.g., Hoffman v. County of Delaware,* 41 F.Supp.2d 195 (N.D.N.Y.1999), *aff'd,* 2001 WL 232757 (2d Cir.2000), and need not restate it here. The Court will apply the standards set out in those decisions to the motion for summary judgment.

### D. Section 1983 Claims

"A § 1983 claim has two essential elements: (1) the defendant acted under color of state law; and (2) as a result of the defendant[s'] actions, the plaintiff[s] suffered a denial of [their] federal statutory rights, or [their] constitutional rights or privileges." *Annis v. County of Westchester,* 136 F.3d 239, 245 (2d Cir.1998). Here, Plaintiffs allege that because Defendants are (or were) County employees, they were acting under color of state law. Plaintiffs further contend that, while acting under color of state law, Defendants violated their constitutional rights under the Fourth and Fourteenth Amendments to be free from defamation and malicious prosecution. Plaintiffs bring separate claims alleging that Defendants engaged in a conspiracy to violate the above constitutional rights.

### 1. Defamation/Conspiracy

Plaintiffs' due process defamation claims are based on public statements Defendants made, reaffirmed to the media, and repeated in testimony to the grand jury and at trial. *See* Complaint ¶¶ 36, 37. Defendants argue that these claims should be dismissed because: (1) testimony (grand jury and trial) is protected by absolute immunity; (2) Defendants were not acting under color of state law when they testified; (3) Defendants' statements to the media are protected by the First Amendment; and (4) Plaintiffs have failed to show stigma plus, which is a necessary element of a constitutional defamation claim. The first two arguments apply only to Plaintiffs' defamation claims arising out of Defendants' grand jury and trial testi-

ment motion, and Plaintiff's filed a responsive 7.1(a)(3) statement.

**14.** Plaintiffs object to the exhibits Defendants appended to their reply papers on the ground that the exhibits represent new arguments, which are improper in reply. The exhibits consist of the transcript to the grand jury proceedings at issue in this case and affidavits from witnesses to those proceedings. In light of Plaintiffs' arguments in their opposition papers that the grand jury did not have probable cause to indict Plaintiffs for official misconduct and that Defendants tainted these proceedings by offering (or attempting to offer) perjurious testimony and false evidence, the grand jury transcript is proper rebuttal evidence. Similarly, the affidavits are proper rebuttal to Plaintiffs' arguments that grand jury witnesses perjured themselves and/or Defendants attempted to coerce false testimony. Finally, the stipulations regarding the pending state court action were proper rebuttal evidence to Plaintiffs' argument that that action established that Defendants destroyed evidence.

mony; the Court will consider these arguments first.

### (a) Absolute Witness Immunity

■ Defendants argue that the Court should dismiss Plaintiffs' Section 1983 defamation claims arising out of Defendants' grand jury and trial testimony pursuant to the doctrine of absolute witness immunity.[15] The Supreme Court has affirmed the applicability of absolute witness immunity to Section 1983 actions arising out of or caused by the substance of public officials' allegedly false trial testimony. *See Briscoe v. LaHue,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). This immunity also applies to grand jury testimony. *See San Filippo v. U.S. Trust Co. of New York,* 737 F.2d 246, 254 (2d Cir.1984), *cert. denied,* 470 U.S. 1035, 105 S.Ct. 1408, 84 L.Ed.2d 797 (1985). Accordingly, Plaintiffs' Section 1983 claims for defamation arising out of trial and/or grand jury testimony of Zwack, Madden, and Cybulski are dismissed because these Defendants are entitled to absolute witness immunity.[16]

### (b) Color of State Law

■ Alternatively, Plaintiffs' defamation claims based on Defendants' allegedly false testimony must be dismissed because, when testifying, Defendants were not acting under the color of state law.[17] *See, e.g., Bennett v. Passic,* 545 F.2d 1260 (10th Cir.1976) ("[W]itnesses who testify at trial are not acting under color of state law."); *Bates v. New York City Transit Auth.,* 721 F.Supp. 1577, 1580 (E.D.N.Y.1989) ("Plaintiff's claim is not based on what Corkran did while clothed with his official authority as a transit police officer, but rather on actions that occurred while he was testifying at an examination before trial in a civil suit. A witness testifying in state court does not act under color of state law for purposes of 42 U.S.C. § 1983.") (citations omitted); *Warren v. Applebaum,* 526 F.Supp. 586, 587 (E.D.N.Y.1981) ("[W]itnesses at trial are not acting under color of state law and as a consequence, their false testimony cannot give rise to a cause of action under Section 1983.").

### (c) Stigma Plus

Plaintiffs also assert Section 1983 defamation claims premised on statements Defendants made to the media. Defendants argue that these claims should be dismissed because they do not satisfy the "stigma plus" standard. Plaintiffs respond that they suffered significant damage to their reputation and that the statements prevented them from pursuing jobs in their chosen profession.[18]

**15.** To the extent Plaintiffs bring claims against Defendant Ehring for defamation, the claims are limited to statements to the media because Ehring did not testify before the grand jury or at trial.

**16.** The "complaining witness" exception established in *White v. Frank,* 855 F.2d 956 (2d Cir.1988), is inapplicable to Plaintiffs' claims for defamation because the defamation claims are based on the substance of trial testimony rather than actions surrounding the initiation or continuance of a criminal prosecution. *See id.* (At common law "[i]n an action for defamation, the perjurious witness... enjoyed absolute immunity...."); *see also San Filippo,* 737 F.2d at 254 ("[A] witness has absolute immunity from § 1983 liability based on the substance of his trial testimony."); *Fowler v. Robinson,* 1996 WL 67994, at *8 (N.D.N.Y. Feb.15, 1996) ("[A]bsolute immunity is available 'only where the constitutional tort is simply giving false testimony...'") (quoting *White,* 855 F.2d at 961). For a full discussion of this exception see *infra* Section II(D)(2)(a).

**17.** Unlike police officers, who sometimes are found to act under color of state law when they testify, *see Briscoe v. LaHue,* 663 F.2d 713, 721 (7th Cir.1981), *aff'd,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983), the Defendants in this case did not testify while acting in their official capacity.

**18.** Plaintiffs' affidavits list the "constitutional deprivations" of which they believe Defendants deprived them. Neither mention injury related to the defamation. *See* Cipolla Aff. at ¶ 58; Martin Aff. ¶ 15. These paragraphs read: "I believe I suffered a number of Constitutional injuries. First and foremost, I was forced to submit to the jurisdiction of the County Court based on an indictment that was procured through lies, fraud and the

In order to state a claim for defamation under Section 1983, a plaintiff must establish both that the statements at issue were defamatory and that they deprived him of a liberty or property interest. *See Siegert v. Gilley*, 500 U.S. 226, 233, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991) ("Defamation by itself, is a tort actionable under the laws of most states but not a constitutional deprivation"), *reh'g denied*, 501 U.S. 1265, 111 S.Ct. 2920, 115 L.Ed.2d 1084 (1991); *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), *reh'g denied*, 425 U.S. 985, 96 S.Ct. 2194, 48 L.Ed.2d 811 (1976); *Morris v. Lindau*, 196 F.3d 102, 114 (2d Cir.1999). "For a government employee, a federal cause of action for deprivation of a liberty interest arises when the alleged defamation occurs in the course of some negative alteration of the employee's status, such as dismissal or refusal to rehire." *Morris*, 196 F.3d at 114 (citing *Neu v. Corcoran*, 869 F.2d 662, 667 (2d Cir.1989)); *see also Donato v. Plainview–Old Bethpage Central Sch. Dist.*, 96 F.3d 623, 630 (2d Cir. 1996), *cert. denied*, 519 U.S. 1150, 117 S.Ct. 1083, 137 L.Ed.2d 218 (1997); *O'Neill v. City of Auburn*, 23 F.3d 685, 692 (2d Cir.1994). "In addition, the defamation must have occurred close in time to the dismissal or other negative employment action for an employee to succeed on a claim of a liberty deprivation." *Morris*, 196 F.3d at 114 (citing *Martz v. Incorporated Village of Valley Stream*, 22 F.3d 26, 32 (2d Cir.1994)). Statements which implicate a liberty interest (when coupled with adverse employment action) may include charges of dishonesty, illegality, or professional incompetence. *See Donato*, 96 F.3d at 630. However, "governmental allegations of professional incompetence do not implicate a liberty interest in every instance. Such allegations will support a right to a name-clearing hearing only when they denigrate the employee's competence as a professional and impugn the employee's professional reputation in such a fashion as to effectively put a significant roadblock in that employee's continued ability to practice his or her profession." *Donato*, 96 F.3d at 630 (citing *O'Neill v. City of Auburn*, 23 F.3d 685, 692 (2d Cir. 1994)).

A majority of the allegedly defamatory statements of which Plaintiffs complain involve Cipolla's alleged responsibility for supervising and/or finding work for Van Ort. *See* Comp., ¶ 36; Cipolla Aff. Exs. A–E. These statements do not meet the stigma plus standard for numerous reasons. These statements are not substantively the type that implicate liberty interests. *See, e.g., Donato*, 96 F.3d at 630.[19] Moreover, the statements were not concurrent to or connected with Plaintiffs' termination/resignation or any other negative employment action. Thus, the only potential damage flowing from these statements is reputational damage. It is well-settled that this type of injury is insufficient to establish a constitutional claim and should be addressed by state tort law rather than Section 1983. *See Valmonte v. Bane*, 18 F.3d 992, 1000 (2d Cir.1994) ("[T]he deleterious effects which flow directly from a sullied reputation would normally also be insufficient. These would normally include the impact that defamation might have on job prospects or, for that matter, romantic aspirations, friendships, self-esteem, or any other typical consequence of a bad reputation."); *Zem-*

---

withholding of exculpatory evidence. Secondly, after surrendering to the Court, I was forced to undergo several hours of custody, as pedigree information was taken from me by law enforcement officials, and as my fingerprints were taken. Thirdly, I was forced to endure a public trial that lasted nearly three weeks, at great expense to me financially and emotionally." *See* Martin Aff. at ¶ 15. Cipolla's statement adds "I was forced to attend scheduled Court appearances for a period over one year," and is in all other respects identical. *See* Cipolla Aff. at ¶ 58.

19. Similarly, the statements made by Defendants before the grand jury were not substantively the type which would implicate liberty interests.

*sky v. City of New York*, 821 F.2d 148, 151 (2d Cir.1987) ("The Supreme Court has held that an individual whose reputation is injured by the remarks of a public official, but who suffers no resultant tangible injury such as loss of employment as a result of the defamation, is not deprived of a liberty or property interest protected by the due process clause.") (citing *Paul*, 424 U.S. at 699–710, 96 S.Ct. 1155), *cert. denied*, 484 U.S. 965, 108 S.Ct. 456, 98 L.Ed.2d 396 (1987), *reh'g denied*, 486 U.S. 1019, 108 S.Ct. 1760, 100 L.Ed.2d 221 (1988); *see also Morris*, 196 F.3d at 114 (2d Cir.1999); *O'Neill*, 23 F.3d at 691 n. 2.

 Certain statements made after the initiation of the grand jury investigation and after Plaintiffs' indictment are more troubling. During this period, Cybulski stated to the press: "One of the fundamental reasons that Mr. Cipolla was terminated from county employment is because it became apparent that he was incapable of managing his department, fulfilling his job requirements, and taking responsibility for his action or inactions.... Mr. Cipolla is merely a disgruntled ex-employee taking the only opportunity he has been provided to strike back at Henry [Zwack] because he was fired." *See* Cipolla Aff. Ex. G. Madden made statements implying that Cipolla was untrustworthy. *See* Cipolla Aff. Exs. E, F. Zwack publicly stated that the indictments confirmed that his decision to terminate Plaintiffs was fully justified, implying that Plaintiffs' termination resulted from an internal investigation of the Van Ort debacle. *See* Cipolla Aff. Exs. J, K.[20] These statements are substantively sufficient to implicate a liberty interest, *see Donato*, 96 F.3d at 630–32 (discussing cases finding a liberty interest), however, they were made more than six months after Cipolla resigned and Martin was terminated.[21] The absence of the necessary nexus between the defamation and the time of termination/ resignation precludes a finding that Defendants' statements were made "in the course of" any adverse employment action and, thus, bars Plaintiffs' Section 1983 due process claims based on defamation. *See Morris*, 196 F.3d at 114 (defamation must be concurrent with adverse employment action); *Jaeger v. Board of Education*, 125 F.3d 844 (2d Cir.1997) (Table) (denying claim because of five month gap between employment action and alleged defamation); *Martz*, 22 F.3d at 32 (five month separation between termination and alleged defamation precludes constitutional defamation claim); *Gentile v. Wallen*, 562 F.2d 193, 198 (2d Cir.1977) (alleged defamatory statements made after plaintiff had been terminated from employment as public school teacher amounted to "simple defamation" which does not trigger due process rights); *Shanley v. Hanna* 1998 WL 146250, at *3 (N.D.N.Y. Mar.24, 1998) (McCurn, S.J.) ("[T]he absence in the complaint of an alleged nexus between the defamation and the loss of plaintiff's employment or a deprivation of some other independent legal right is fatal to plaintiff's claim pursuant to § 1983."). Accordingly, Defendants' motion for summary judgment on Plaintiffs' Section 1983 due process claims based on defamation is granted.

### (d) Conspiracy

 Plaintiffs next allege that Defendants took part in a conspiracy to violate their constitutional rights, including their right to due process. The ensuing discussion applies only to Plaintiffs' conspiracy to deny due process defamation claims. In

---

**20.** Zwack provided both Plaintiffs favorable recommendations at the time they left office and publicly cited "philosophical differences" as the reason for their termination/resignation. *See, e.g.,* Cipolla Aff. Exs.

**21.** Handwritten dates on the newspaper articles appended to Cipolla's affidavit indicate that Cybulski and Madden's statement(s) were reported in or after July 24 and 27, 1997 and Zwack's statements were in or after September 1997. *See* Cipolla Aff., Exs. Plaintiffs left County employment at the end of December, 1996.

order to state a claim for of conspiracy pursuant to Section 1983, Plaintiffs must establish: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages. *See Pangburn v. Culbertson,* 200 F.3d 65, 72 (2d Cir.1999) (citations omitted). Thus, in order to recover Section 1983 damages for conspiracy, Plaintiffs must prove that their constitutional rights were actually violated. *See Birnbaum v. Trussell,* 371 F.2d 672, 676 (2d Cir.1966) ("If the appellees conspire to and did in fact deprive [plaintiff] of this right, they violated Section 1983."); *Singer v. Fulton County Sheriff,* 63 F.3d 110, 119 (2d Cir.1995), *cert. denied,* 517 U.S. 1189, 116 S.Ct. 1676, 134 L.Ed.2d 779 (1996); *Quinn v. City of Johnstown,* (N.D.N.Y. Apr. 15, 1998), *aff'd,* 173 F.3d 845, 1999 WL 232798 (2d Cir.1999); *Harmer v. City of Lockport,* 2000 WL 210201, at *4 (W.D.N.Y. Feb.9, 2000); *Duff v. Coughlin,* 794 F.Supp. 521, 525 (S.D.N.Y.1992); *Rosenfeld v. Sample,* 1986 WL 13940, at *5 (W.D.N.Y. Dec.11, 1986), *aff'd,* 819 F.2d 1130 (2d Cir.1987). Assuming without deciding that the record supports a finding that Defendants intended to deprive Plaintiffs of their constitutional right to due process, agreed to do this, and took overt actions in furtherance of their illicit agreements, Plaintiffs' claims must be dismissed. As discussed above, Plaintiffs have not established a due process violation based on defamation and, thus, their Section 1983 conspiracy claims on this ground must fail. *See, e.g., Quinn,* 1998 WL 187404, at *5 ("Insofar as the claim alleges a conspiracy to violate Quinn's First Amendment rights, it fails because Quinn fails to prove the underlying First Amendment violation. . . ."). Accordingly, Defendants' motion for summary judgment on these claims is granted.

### 2. Malicious Prosecution/ Conspiracy

Defendants next move for summary judgment on Plaintiffs' Section 1983 malicious prosecution claims and the concomitant conspiracy claims. Defendants first argue that the claims are barred by absolute immunity and next that they should be dismissed on their merits.

### (a) Absolute Witness Immunity

Defendants argue that Plaintiffs' malicious prosecution claims should be dismissed on immunity grounds. As discussed in Section II(D)(1)(a), witnesses are generally afforded absolute immunity from civil liability for both grand jury and trial testimony irrespective of the truthfulness of that testimony.

In malicious prosecution actions, however, the Second Circuit has carved out an exception to absolute witness immunity for "complaining witnesses." *See White,* 855 F.2d at 956. Returning to the common law roots of the immunity doctrine, the *White* Court explained that there is a crucial distinction between a "mere witness" who is entitled to immunity and a "complaining witness" who is not. *Id.* at 958–59. The court stated that, at common law, "[t]hose whose role was limited to providing testimony enjoyed immunity; those who played a role in initiating a prosecution—complaining witnesses—did not enjoy immunity." *See id.; see also Morillo v. The City of New York,* 1997 WL 72155, at *1 (S.D.N.Y. Feb.20, 1997). The *White* Court went on to state:

> the distinction reflected the difference between the two causes of action by which those falsely accused sought to hold a witness liable. In an action for defamation, the perjurious witness was sought to be held liable only for the defamatory effect of his testimony, and in such an action he enjoyed absolute immunity upon a threshold showing that the allegedly defamatory statements were relevant to the judicial proceedings.

*Id.* (citing *Briscoe,* 460 U.S. at 330–32, 103 S.Ct. 1108). "However, in an action for

malicious prosecution, the complaining witness was sought to be held liable for his role in initiating a baseless prosecution, and 'complaining witnesses were not absolutely immune at common law.'" *Id.* (quoting *Malley v. Briggs,* 475 U.S. 335, 340, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).

Thus, Zwack, Cybulski, and Madden are immune from malicious prosecution claims arising out of their testimony only if they were not complaining witnesses. *See id.; see also Robinson,* 1996 WL 67994, at *9. The question of whether a witness is a complaining witness is a factual one, *see Sykes v. James,* 13 F.3d 515, 520 (2d Cir.1993) (citation omitted), resting on "the determination of whether the witness played such a role in initiating the proceedings that it can be said the witness commenced or continued proceedings against the plaintiff within the meaning of the law of malicious prosecution." *Mejia v. City of New York,* 2000 WL 1643859 (E.D.N.Y. Oct.5, 2000) (citing *White,* 855 F.2d at 962); *see also Wyatt v. Cole,* 504 U.S. 158, 164, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992) ("[C]omplaining witnesses ... set the wheels of government in motion by instigating a legal action[.]").

Plaintiffs point to Defendants' alleged perjured testimony in front of the grand jury as evidence that they are "complaining witnesses" exempt from absolute immunity. Additionally, Plaintiffs proffer newspaper articles suggesting that Zwack took part in initiating Plaintiffs' prosecution and later took credit for the grand jury proceedings. *See, e.g.,* Cipolla Aff. ¶¶ 28, 29, 32, 35, 37, 39, 41 and Exs. D, E, H, J, K thereto. Although the fact that the grand jury considered legal charges against Zwack, ultimately voting not to indict him, *see* Sept. 4, 1997 Grand Jury Tr. at p. 165, casts doubt on the suggestion that Zwack initiated its investigation, taking all inferences in favor of Plaintiff, based on Zwack's statements to the media, a reasonable jury could find that Zwack acted as a complaining witness. Accordingly, he is not entitled to summary judgment pursuant to absolute witness immunity at this juncture.

The lack of evidence regarding Madden and Cybulski's participation in the initiation of the grand jury investigation and/or prosecution, however, would preclude a reasonable jury from finding that they were complaining witnesses. Accordingly, Madden and Cybulski are entitled to immunity on the malicious prosecution claims.

But for Plaintiffs' allegations of conspiracy, the absolute immunity analysis would end here. In this Circuit, however, absolute witness immunity does not extend to allegations of conspiracy. *See Dory v. Ryan,* 999 F.2d 679 (2d Cir.), *reh'g granted,* 25 F.3d 81 (1994); *San Filippo v. U.S. Trust Co.,* 737 F.2d 246, 254 (2d Cir.1984). As discussed below, Plaintiffs have stated claims for conspiracy. Accordingly, Madden and Cybulski are not entitled to absolute immunity on the conspiracy claims.

**(b) Prosecutorial Immunity**

Defendant Ehring next argues that the malicious prosecution and conspiracy claims should be dismissed against him pursuant to the doctrine of prosecutorial immunity. "Absolute immunity protects a prosecutor from § 1983 liability for virtually all acts, regardless of motivation, associated with his function as an advocate." *Dory v. Ryan,* 25 F.3d 81, 82 (2d Cir.1994). Thus, a prosecutor is entitled to absolute immunity for "all actions relating to their advocacy" even in the face of allegations of conspiracy. *Id.* ("As much as the idea of a prosecutor conspiring to falsify evidence disturbs us ... we recognize that there is a greater societal goal in protecting the judicial process by preventing perpetual suits against prosecutors for the performance of their duties."); *see also Pinaud v. County of Suffolk,* 52 F.3d 1139, 1148 (2d Cir.1995) (internal quotations and citations omitted); *Hill v. City of New York,* 45 F.3d 653, 659 (2d Cir.1995). The fact that Ehring is a prosecutor, however, does not immediately qualify him for absolute

immunity. This immunity depends on "the nature of the function performed, not [on] the identity of the actor who performed it." *Forrester v. White,* 484 U.S. 219, 229, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988); *see also Pinaud,* 52 F.3d at 1147. "When a prosecutor is engaged in administrative or investigative activities, he is entitled only to qualified immunity, and thus the individual district attorney defendants in this action are to be held absolutely immune from liability under section 1983 [only] for acts within the scope of [their] duties in initiating and pursuing a criminal prosecution." *Pinaud,* 52 F.3d at 1147 (citations omitted). The official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question. *See Burns v. Reed,* 500 U.S. 478, 111 S.Ct. 1934, 1939–40, 114 L.Ed.2d 547 (1991). At this juncture, Ehring has not provided evidence to support a finding as a matter of law that his actions as a liaison between the County and the County Attorney's Office fall within the protection of prosecutorial immunity. Accordingly, the Court will not dismiss Plaintiffs' claims against Ehring on this basis.

### (c) The Malicious Prosecution Claims [22]

■ The Court must engage in two inquiries when faced with a Section 1983 malicious prosecution claim. First, the Court must determine whether the defendants' conduct was tortious. *See Singer v. Fulton County Sheriff,* 63 F.3d 110, 116 (2d Cir.1995). Second, the Court must consider "whether the plaintiff[s'] injuries were caused by the deprivation of liberty guaranteed by the Fourth Amendment." *Id.; see also Rarick v. DeFrancesco,* 94 F.Supp.2d 279, 290 (N.D.N.Y.2000) (Smith, M.J.); *Noel v. Houtman,* 1997 WL 176316 (N.D.N.Y. Apr.8, 1997)(Pooler, J.).

■ To satisfy the first inquiry, Plaintiffs must establish the elements of a state law malicious prosecution claim. *See Janetka v. Dabe,* 892 F.2d 187, 189 (2d Cir. 1989). The elements of a malicious prosecution claim under New York Law include: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as motivation for defendant's actions." *See Murphy v. Lynn,* 118 F.3d 938, 947 (2d Cir.1997) (quoting *Russell v. Smith,* 68 F.3d 33, 36 (2d Cir.1995) (citing cases)), *cert. denied,* 522 U.S. 1115, 118 S.Ct. 1051, 140 L.Ed.2d 114 (1998); *O'Brien v. Alexander,* 101 F.3d 1479, 1484 (2d Cir.1996).

■ It is undisputed that a criminal proceeding was initiated against Plaintiffs [23] and that the proceeding terminated in their favor. Accordingly, the Court will consider whether the proceeding was initiated on probable cause.[24]

---

22. As discussed above, Zwack and Ehring have not produced sufficient evidence to support a grant of summary judgment on immunity grounds.

23. It is not clear that Defendants initiated this proceeding and, as discussed above, Plaintiffs have not provided evidence from which a reasonable juror could conclude that Madden and Cybulski did. To the extent that Defendants imply that the action should be dismissed against Zwack and Ehring because the grand jury, rather than the Defendants, initiated the prosecution, this argument must fail. The "intervening acts of a grand jury have never been enough to defeat an otherwise viable malicious prosecution claim, whether or not the grand jury votes a true bill or even returns an indictment deficient as a matter of law...." *Komlosi v. Fudenberg,* 2000 WL 351414, at *10 (S.D.N.Y. Mar.31, 2000) (citations omitted).

24. In their motion for reconsideration, Plaintiffs argue that the Court raised the issue of probable cause *sua sponte.* The Court cannot agree with this point. Defendants moved to dismiss, *inter alia,* for failure to state a claim. Lack of probable cause is an essential element of a malicious prosecution claim. *See, e.g., Murphy,* 118 F.3d at 947. Moreover, in responding to Defendants' motion, Plaintiffs placed probable cause (and the presumption based on the grand jury indictment) at issue. *See, e.g.,* Plaintiffs' Mem. of Law at p. 13. Moreover, this is an argument for appeal, not reconsideration.

To show a lack of probable cause for commencing a criminal action, Plaintiffs must show that Defendants had no " 'knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of.' " *Rounseville v. Zahl*, 13 F.3d 625, 629 (2d Cir.1994) (quoting *Pandolfo v. U.A. Cable Systems of Watertown*, 171 A.D.2d 1013, 568 N.Y.S.2d 981, 982 (4th Dep't 1991)). In cases where an individual is prosecuted pursuant to a grand jury indictment, there is a rebuttable presumption of probable cause. *See Green v. Montgomery*, 219 F.3d 52, 60 (2d Cir.2000) (citations omitted). "To rebut this presumption, the plaintiff must establish that the indictment was produced by fraud, perjury, the suppression of evidence or other [conduct] undertaken in bad faith." *Bernard v. United States*, 25 F.3d 98, 104 (2d Cir. 1994) (internal citation and quotation omitted); *see also White*, 855 F.2d at 962.

Plaintiffs contend that they have provided evidence from which a rational jury could conclude that the indictment was produced by fraud, perjury, the suppression of evidence or other bad faith conduct. Specifically, Plaintiffs allege that their affidavits and the affidavits of Kathleen Bull and Christina Mahoney suggest that Zwack, Ehring, Madden, and Cybulski conspired to present false information (in the form of both documentary and testimonial evidence) to the grand jury and that Defendants testified falsely before the grand jury. These allegations are further supported by the apparently contradictory testimony of Defendant Madden and the recent indictment of Zwack for, *inter alia*, perjury in the grand jury proceedings at issue. Plaintiffs also cite to statements by Defendants that they never believed there was probable cause to indict Plaintiffs.

Mahoney is the Director of Personnel for the County. Her affidavit states that she was asked to calculate the amount of money paid to Van Ort that "should not have been" and was later asked by Ehring to reduce this amount so that Van Ort would be charged with a misdemeanor rather than a felony. *See* Mahoney Aff. at ¶¶ 2–5 (appended to Cipolla Aff. as Ex. N).[25] Mahoney did not testify before the grand jury regarding these issues, rather, she testified regarding general personnel procedures, the decision to cancel Van Ort's accrued sick and vacation hours, and the facts that Cipolla was Van Ort's supervisor and he signed and/or authorized Van Ort's time cards. *See* Mahoney Testimony, July 9 and Sept. 4, 1997 Grand Jury Tr. Mahoney further stated that at some point prior to Plaintiffs' trial Zwack called her, Manette Eddy,[26] and Kathleen Bull into his office and asked them to file false sexual harassment charges with the New York State police against Cipolla and recruit other female employees to file such charges in order to tarnish Cipolla's character at the forthcoming trial. *Id.* at ¶ 5.[27]

---

**25.** Mahoney's calculations of the overpaid amount allegedly came to an amount over $1,000.00. *Id.* at ¶ 3. Mahoney stated that, after showing this amount to Defendant Ehring, Ehring told her to reduce the amount to a number less than $1,000.00. When Mahoney asked why, Mahoney stated that Ehring told her "Henry [Zwack] wants the amount to be less" because an amount over $1,000.00 would result in a felony rather than misdemeanor charge. After this incident, Mahoney allegedly informed Zwack, Cybulski, and Robert Smith, County Attorney, that Ehring had told her to make this change so that Van Ort would be charged with a misdemeanor rather than a felony. None of these individuals instructed Mahoney to place the proper amount in the records. *See id.* at ¶¶ 3–4. Defendants deny this meeting took place and Thomas Hendry, who Mahoney alleges attended the meeting, denies that he was present. *See* Hendry Aff. ¶ 3.

**26.** Eddy denies this meeting took place. *See* Eddy Aff. at ¶ 4.

**27.** The remaining paragraphs of Mahoney's deposition discuss allegedly illegal activities Zwack and his representatives requested she perform and allegations that Zwack required County employees to contribute to his reelection campaign. *See* Mahoney Aff. ¶¶ 6–7. The allegedly illegal actions and campaign

Mahoney refused to do this. The grand jury did not hear evidence of sexual harassment or allegations regarding Cipolla's character. *See* Grand Jury Tr.

The relevant (and admissible) [28] portions of Bull's affidavit include statements that Plaintiffs strongly objected to the continued employment and payment of Van Ort. *See* Bull Aff. at ¶ 4 (appended to Cipolla Aff. as Ex. O). Bull further stated that Zwack called her, Mahoney, and Manette Eddy into his office and asked them to file false sexual harassment charges against Cipolla and to find other people to do the same in order to tarnish Cipolla's character. *See id.* at ¶ 6. According to Bull, Zwack made the same request in a second meeting. Moreover, Bull stated that Ehring asked her to lie to the grand jury. *Id.* at ¶ 7. Specifically, Bull stated that she told Ehring that Zwack had ordered payment of Van Ort over Martin's refusal and Ehring stated "You won't be saying that, right Kath" and that at about the time of the grand jury proceeding Zwack asked her to be a "character assasinator against [Plaintiffs]." Finally, Bull stated that she was asked to create a false job specification to "justify Dirk's existence" and that computer files regarding Van Ort were deleted from her computer. *See* Bull Aff. at ¶¶ 7, 10. Like Mahoney, Bull refused to file false sexual harassment charges or serve as a character assasinator against Cipolla. Bull was not called as a grand jury witness.

Plaintiffs further allege that Madden, Zwack, and Cybulski's purportedly false testimony suggests that they conspired against Plaintiffs and presented false evidence to the grand jury. Although conflicting testimony is a routine part of the litigation process and, without more, cannot rebut the presumption of probable cause, *see, e.g., United States v. Gambino,* 59 F.3d 353, 365 (2d Cir.1995) (conflict in witness' own testimony does not itself constitute perjury), *cert. denied,* 517 U.S. 1187,.116 S.Ct. 1671, 134 L.Ed.2d 776 (1996), here Plaintiffs do not only allege that the testimony of the individual witnesses conflicted, but also that Madden and Zwack testified to facts before the grand jury that were inconsistent with statements they made prior to and/or after the grand jury proceedings.

Finally, Plaintiffs point to the State Court decision in *Smith v. County of Rensselaer, et al.,* Index No. 192505 (N.Y.Sup. Ct. May 17, 2000), finding Zwack and the County in contempt for the destruction of documents and failure to produce documents related to the Van Ort matter pursuant to a request under the Freedom of Information Law ("FOIL"). Although a review of the factual stipulations agreed to by the parties after the state court's decision was issued suggests that this misconduct did not impact the grand jury proceedings,[29] taking all inferences in favor of the Plaintiff, a reasonable jury could conclude that the inappropriate and/or inaccu-

contributions are unrelated to the prosecution or trial of Plaintiffs and, thus, are not relevant.

**28.** Bull's statement that Cipolla and Martin told her that Van Ort remained on the payroll (despite the fact that he did not perform any function for the County) as a result of a political deal between Zwack and the outgoing County Executive is inadmissible hearsay. *See* FED. R. EVID. 803. However, similar evidence was in front of the grand jury through Zwack's testimony.

Bull's statement that she was asked to participate in illegal activities or harassed for not engaging in illegal activities is unrelated to

Plaintiffs' prosecution and, thus, irrelevant. *See* Bull Aff. at ¶¶ 9–11.

**29.** It is possible that the only document "destroyed" was a press release, which was not destroyed until after it was produced pursuant to FOIL and that the other documents were "not preserved" because they were sent to the District Attorney's Office for use in the grand jury investigation. Defendants produced the documents for the grand jury without copying them and, once the documents were in the hands of the grand jury, they were under protective seal. The District Attorney refused to release the documents for FOIL production until the seal was removed. *See* Stewart Reply Aff. at Ex. F.

rate responses to the FOIL requests surrounding the grand jury proceedings gave rise to an inference of fraud or impropriety tainting the grand jury proceedings.

■ The fact that all but one of the material grand jury witnesses submitted affidavits at the behest of one of the parties in this action stating that they testified truthfully before the grand jury and that their testimony was not coerced suggests that Plaintiff may not find further evidence indicating that grand jury witnesses testified falsely.[30] *See* Mahoney Aff.; Manoni Aff. ¶ 3; Eddy Aff. ¶ 5; Cook Aff. ¶ 3; Sanders Aff. ¶ 2; Fitzpatrick Aff. ¶ 3; Cybulski Aff. ¶ 4; Madden Aff. ¶ 9. Even assuming this to be true, based on the evidence before the Court, a rational jury could find that: (1) Zwack and Madden testified falsely before the grand jury; (2) Zwack and Ehring requested that potential witnesses testify falsely and/or create false documentary evidence for the grand jury's review; (3) Bull was not called to testify because she would not testify falsely; (4) Defendants circumscribed certain witnesses testimony; (5) Defendants created false documentary evidence for the grand jury's review (i.e., Van Ort's job description), *see* Bull Aff. at ¶ 9; and (6) relevant documentary evidence was destroyed. From this evidence, a reasonable jury could find that Plaintiffs successfully rebutted the presumption of probable cause

Accordingly, the Court will consider whether, in spite of the alleged wrongdoing, the evidence supports a finding of probable cause. *See Jenkins v. City of New York,* 1999 WL 782509, at *15 (S.D.N.Y. Sept.30, 1999), *aff'd,* 216 F.3d 1072, 2000 WL 730226 (2d Cir.2000); *Mistretta v. City of New York,* 1999 WL 1129618, at *4 (E.D.N.Y. Oct 15, 1999). Because the credibility and completeness of the evidence and testimony before the grand jury is in question the Court cannot

determine that, absent wrongdoing, probable cause for the indictment existed.

■ The final element of a malicious prosecution claim pursuant to New York Law is malice. The Second Circuit has found that lack of probable cause generally raises an inference of malice sufficient to withstand summary judgment. *See Ricciuti,* 124 F.3d at 131; *Lowth v. Town of Cheektowaga,* 82 F.3d 563, 573 (2d Cir. 1996). As discussed above, Plaintiffs have introduced evidence from which a reasonable jury could find the absence of probable cause; that finding alone would support an inference of malice. *See Ricciuti,* 124 F.3d at 131.

Based on the foregoing evidence, a reasonable jury could find Zwack and Ehring liable for malicious prosecution. A reasonable jury could similarly find that Plaintiffs' injury was caused by deprivation of a liberty guaranteed by the Fourth Amendment as necessary to establish a Section 1983 claim for malicious prosecution. *See Singer,* 63 F.3d at 116; *see also Rohman v. New York City Transit Authority,* 215 F.3d 208, 216 (2d Cir.2000) (requiring Plaintiff to return to court on at least five occasions before the charges against him were dropped is sufficient post arraignment restraint on liberty).

### (d) Conspiracy

■ Plaintiffs next allege that Defendants engaged in a conspiracy to produce false evidence and perjured testimony against them in an attempt to violate their constitutional right to be free from malicious prosecution. As discussed above, the elements of a Section 1983 conspiracy claim are an agreement to act in concert to inflict constitutional injury and an overt act done in furtherance of that goal causing damages. *See Pangburn,* 200 F.3d at 72. The discussion of probable cause above illustrates that Plaintiffs have sub-

---

**30.** Rebecca Syrotinski, Trudy Clayton, the Van Orts, and Marion Gold did not supply affidavits.

mitted evidence from which a reasonable jury could infer that Defendants acted together to shift the blame for the Van Ort debacle onto Plaintiffs. For example, the jury could conclude that: Zwack, Madden, and possibly Cybulski testified falsely regarding, *inter alia,* Cipolla's responsibility for supervising Van Ort and Zwack and Madden's lack of responsibility for and involvement with Van Ort; Zwack and Ehring asked certain witnesses to testify falsely regarding the parties involvement with and responsibility for Van Ort and Cipolla's character; and the documentary evidence before the grand jury was tainted either because it was false or incomplete. On this record, a reasonable jury could conclude that Defendants took actions in furtherance of an agreement that violated Plaintiffs' constitutional rights and, if the jury credits the above evidence, it could reasonably infer the necessary agreement. *See Cofacredit v. Windsor Plumbing Supply Co., Inc.,* 187 F.3d 229, 239 (2d Cir. 1999) (finding that agreement in civil conspiracy could be inferred from circumstantial evidence). Accordingly, Defendants' motion for summary judgment on these claims is denied.

### 3. Qualified Immunity

■ Defendants next move for summary judgment on the Section 1983 claims on the grounds of qualified immunity. The doctrine of qualified immunity shields government officials from suit for acts undertaken in the course of their duties if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). When a right is clearly established, qualified immunity attaches "insofar as it was objectively reasonable to believe that [the government agent's] acts did not violate these rights." *Calamia v. City of New York,* 879 F.2d 1025, 1035 (2d Cir.1989).

■ Plaintiffs had a clearly established Fourth Amendment right to be free from malicious prosecution (or a concomitant conspiracy). Accordingly, the relevant question is whether it was objectively reasonable for Defendants to believe that their conduct did not violate Plaintiffs' right. Taking all inferences in Plaintiffs' favor, the Court is left to consider whether it was objectively reasonable for Defendants to believe that, *inter alia,* presenting perjured testimony, soliciting perjured testimony, providing false documentary evidence, withholding relevant evidence in order to secure a criminal indictment and/or conspiring to do the above did not violate Plaintiffs' clearly established rights. Clearly, this belief would not be objectively reasonable. Accordingly, Defendants are not entitled to qualified immunity at this juncture.

### 4. Monell Liability

■ Finally, Defendants argue that the claims against the County should be dismissed on the basis of *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In *Monell,* the Supreme Court held that municipalities are liable under § 1983 only for violations of federal law that occur pursuant to official governmental policy or custom. These policies can be set by the legislature "or by those whose edicts or acts may fairly be said to represent official policy." *Monell,* 436 U.S. at 694, 98 S.Ct. 2018.

Where, like here, the contention is not that the actions complained of were taken pursuant to a local policy that was formally adopted or ratified but that actions of a "an official whose actions represent official policy" resulted in a constitutional violation, *see Jeffes v. Barnes,* 208 F.3d 49, 57 (2d Cir.2000) (citations omitted), "[a] court's task is to 'identify those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue.'" *McMillian v. Monroe County, Alabama,*

520 U.S. 781, at 784, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997) (quoting *Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989)). Thus, the Court must determine as a matter of law whether an official had final policymaking authority in the particular area involved in the alleged constitutional violation. *See Jeffes*, 208 F.3d at 57 (citations omitted). "[T]he official in question need not be a municipal policymaker for all purposes. Rather, with respect to the conduct challenged, he must be responsible under state law for making policy in that area of the [municipality's] business." *Id.* (internal citations and quotations omitted). This determination is governed by state law. *See Jett*, 491 U.S. at 736, 109 S.Ct. 2702.

The Court does not now have sufficient evidence to determine, as a matter of law, whether Defendants had policy making authority in the pertinent areas. More information regarding the underlying events (specifically the initiation of the grand jury proceeding) are necessary prior to making this determination. *See, e.g., Bowman v. City of Middletown*, 91 F.Supp.2d 644, 661 (S.D.N.Y. Apr.4, 2000) (denying *Monell* liability where plaintiff provided no evidence to link the policy maker to the decisions resulting in alleged malicious prosecution). Accordingly, the County's motion for summary judgment on this ground is denied without prejudice.

### 5. State Law Claims

Plaintiff brings state law claims against Defendants for: (1) malicious prosecution; (2) intentional or negligent infliction of emotional distress; and (3) claims for defamation against Zwack and Madden.

### a. Notice of Claim

Plaintiffs concede that they have not filed a Notice of Claim as required by General Municipal Law § 50 and, thus,

their state law claims against the County are barred. Accordingly, the County's motion for summary judgment on these claims is granted.

■ The Notice of Claim requirement applies to the individual defendants only if the County is obligated to indemnify them. *See* GEN. MUN. LAW § 50–e[1][b]; *see also International Shared Services, Inc. v. County of Nassau*, 222 A.D.2d 407, 408, 634 N.Y.S.2d 722 (2d Dep't 1995). "The obligation to indemnify in turn depends upon the resolution of the fact-sensitive question of whether [Defendants] were acting within the scope of their employment [with the County] in committing the alleged tortious acts." *See International Shared Services, Inc.*, 222 A.D.2d at 408, 634 N.Y.S.2d 722. At this juncture, the record does not contain sufficient evidence to determine if the County has a duty to indemnify Defendants and, thus, whether Plaintiffs' failure to file the Notice of Claim bars the state causes of action. Accordingly, Defendants' motion for summary judgment on the state law claims against the individual Defendants for failure to file a Notice of Claim is denied without prejudice.

### b. Defamation

Alternatively, Defendants argue that the defamation claims should be dismissed against the individual Defendants because they are barred by either absolute privilege or the relevant one year statute of limitations.

■ Plaintiffs' defamation claims are based on a number of statements reported by the press between July 3, 1997 and November 1998. *See* Complaint at ¶¶ 66—69. Claims based on statements reported prior to October 27, 1998 are time barred. *See* N.Y. C.P.L.R. 215(3) (defamation claims governed by one year statute of limitations).[31]

---

**31.** Publication occurs at the time the defamatory article is made available to the public and actual sales of the article are unneces-

sary. *See Tomasino v. William Morrow & Co.*, 174 A.D.2d 734, 571 N.Y.S.2d 571 (2d Dep't 1991). Republication occurs when a defama-

458

■ Plaintiffs' remaining defamation claims are based on: (1) Defendants' trial testimony and (2) newspaper articles published in November 1998.[32] The newspaper articles contain reports of the trial and Zwack's testimony at the trial as well as background information about the trial. The articles do not attribute statements, other than testimony, to Zwack or Madden. Defendants' statements at trial, and the republication of those statements, are protected by the absolute privilege New York grants pertinent statements made in the course of judicial proceedings. *See Toker v. Pollak* 44 N.Y.2d 211, 220, 405 N.Y.S.2d 1, 376 N.E.2d 163 (1978); *Pecue v. West,* 233 N.Y. 316, 319, 135 N.E. 515 (1922); *Mosesson v. The Jacob D. Fuchsberg Law Firm, Et al,* 257 A.D.2d 381, 683 N.Y.S.2d 88, 89 (1st Dep't 1999); *Memory Gardens, Inc. v. D'Amico,* 91 A.D.2d 1160, 458 N.Y.S.2d 958, 960 (3rd Dep't 1983); *see also* N.Y. Civ. Rights Law § 74. Moreover, assuming without deciding that the newspaper articles constitute "republication" of earlier allegedly defamatory statements of Defendants, because Defendants themselves did not repeat the statements (outside of the judicial proceedings) Defendants are not liable for the newspapers' republication. *See* N.Y. Jur. Defamation & Privacy § 79.

For the foregoing reasons, Plaintiffs' defamation claims are untimely[33] and/or barred by absolute privilege. Accordingly, Defendants' motion for summary judgment

on Plaintiffs' state law defamation claims is granted.

#### c. Intentional and Negligent Infliction of Emotional Distress

Defendants argue that Plaintiffs' state law claims for intentional and negligent infliction of emotional distress are time barred and, because the claims are against a municipality and municipal Defendants, barred by public policy. Plaintiffs respond that the conduct alleged was part of a "continuing wrong" and, thus, not barred by the statute of limitations and that they can collect damages for intentional infliction of emotional distress against the municipal defendants.

■ Because Plaintiffs failed to file the Notice of Claim, the Court has previously dismissed all of Plaintiffs' state law claims against the County. The claims against the County for intentional infliction of emotional distress is similarly barred by public policy. *See Lauer v. City of New York,* 240 A.D.2d 543, 659 N.Y.S.2d 57, at 58 (2d Dep't 1997) ("It is well settled that public policy bars claims sounding in intentional infliction of emotional distress against a governmental entity."). Public policy, however, does not bar the intentional infliction of emotional distress claims against the individual defendants. Accordingly, the Court will consider whether Plaintiffs' intentional infliction of emotional distress claims are barred by the applicable statute of limitations.

tory statement is placed in a new form (paperback as opposed to hardcover) or edited in a different manner. *See Rinaldi v. Viking Penguin,* 52 N.Y.2d 422, 434, 438 N.Y.S.2d 496, 420 N.E.2d 377 (1981).

32. The Complaint points to a November 16, 1998 Times Union article reporting that "Zwack has said that he instructed Cipolla to find tasks for Van Ort," a November 21, 1998 article in The Record reporting that "Zwack blamed Cipolla, Van Ort's supervisor and Martin the personnel director who processed Van Ort's pay." *See* Complaint ¶ 66(h)-(j). The Complaint alleges that the earlier statements of Zwack and Madden were republished in their trial testimony, and in the

November 21, 1998 and November 23, 1998 articles in The Record which reviewed their false version of events. Copies of the November 21 and November 23, 1998 articles are annexed to Cipolla's affidavit as Ex. M. The Court does not have a copy of the November 16, 1998 Times Union Article.

33. To the extent Plaintiffs argue that the defamation was a "continuing wrong" such that the defamation claims are not time barred, they are incorrect. *See Selkirk v. State,* 249 A.D.2d 818, 671 N.Y.S.2d 824 (3d Dep't 1998). For a more complete discussion of the continuing wrong doctrine, *see supra* Section II(3)(c).

■ Intentional infliction of emotional distress claims are governed by a one year statute of limitations. *See* N.Y. C.P.L.R. § 215(3). Most of the conduct alleged in Plaintiffs' Complaint occurred more than ·one year before Plaintiffs filed the instant Complaint. Plaintiffs allege that these claims are not time barred because they were part of a "continuing wrong."

> New York courts have been reluctant to apply a 'continuing wrong' theory to include acts that took place outside of the statute of limitations in intentional infliction of emotional distress claims: "A cause of action for intentional infliction of emotional distress is limited to conduct that occurred within the one-year period immediately preceding the commencement of the action. To hold otherwise would subject defendants to never-ending liability for such claims, which could at any time be triggered by non-extreme, non-outrageous, and non-tortious acts. Merely alleging that such non-actionable conduct was an extension of actionable conduct would resurrect stale time-barred conduct."

*Mariani v. Consolidated Edison Co. of N.Y., Inc.*, 982 F.Supp. 267, (S.D.N.Y.1997) (quoting *Santan–Morris v. New York University Medical Center*, 1996 WL 709577, at *4 (S.D.N.Y. Dec.10, 1996) (quoting *Foley v. Mobil Chem. Co.*, 214 A.D.2d 1003, 1004, 626 N.Y.S.2d 906, 907 (4th Dep't 1995)))), *aff'd*, 172 F.3d 38 (2d Cir.1998). In certain circumstances, however, New York Courts apply the continuing wrong doctrine to intentional infliction of emotional distress claims, where "the acts within the statute of limitations [are] sufficient to make out a claim for intentional infliction of emotional distress, 'independent of those acts that are part of the offending course of conduct but fall outside the time bar.'" *Id.* (quoting *Santan–Morris*, 1996 WL 709577 at *5); *see also Bonner v. Guccione*, 916 F.Supp. 271, 277 (S.D.N.Y.1996) ("the conduct that falls

within the limitations period must be in and of itself actionable conduct"). Plaintiffs allege that after October 27, 1998 Defendants continued to attempt to tarnish Plaintiffs' reputation (in part to lessen their credibility at trial), shift blame for the Van Ort debacle, obtain false evidence (testimonial and documentary) to use against Plaintiffs at trial and tamper with trial witnesses. *See* Complaint at ¶¶ 44–49.[34] The burden is on Plaintiffs to prove that the continuing wrong exception applies. *See, e.g., Kingston v. Braun*, 122 A.D.2d 543, 504 N.Y.S.2d 916 (4th Dep't 1986). Plaintiffs have not provided evidence demonstrating what, if any, specific conduct underlying the their allegations occurred after October 27, 1998. Therefore, they have not satisfied their burden and Defendants' motion for summary judgment on the intentional infliction of emotional distress claims is granted.

■ Defendants' move for summary judgment on the negligent infliction of emotional distress claims arguing first that the claims are time barred and second that Plaintiffs were not in the "zone of danger." Negligent infliction of emotional distress claims are governed by a three year statute of limitations, *see* N.Y. C.P.L.R. § 214, and, thus, Plaintiffs' claims are not time barred. Cases applying the zone of danger rule are inapposite to the case at bar, *see, e.g., Miller v. Chalom*, 269 A.D.2d 37, 710 N.Y.S.2d 154, 156 (3rd Dep't 2000), and this rule does not apply to all negligent infliction of emotional distress claims. *See, e.g., Dillon v. City of New York*, 261 A.D.2d 34, 704 N.Y.S.2d 1 (1st Dep't 1999). Because the zone of danger rule does not apply to the instant case, Defendants' motion for summary judgment on this ground is denied.

#### d. Prima Facie Tort

Defendants move for summary judgment on Plaintiffs' prima facie tort claims arguing that these claims are time barred.

---

**34.** Defendants' argument that Plaintiffs' claims for intentional infliction of emotional distress are based only on Defendants' trial testimony is belied by the record.

Because these claims are based on intentional conduct, they are governed by N.Y. C.P.L.R. § 215(3)'s one year statute of limitations. *See, e.g., Della Villa v. Constantino,* 246 A.D.2d 867, 668 N.Y.S.2d 724 (3d Dep't 1998). Plaintiffs respond that the claims are not time barred because of the continuing wrong doctrine. Because, as discussed above, Plaintiffs' have not provided evidence that specific actions underlying Plaintiffs' prima facie tort claim fell within the statute of limitations the Court cannot find that the continuing wrong doctrine applies. Accordingly, Defendants' motion for summary judgment on this ground is granted and Plaintiffs' prima facie tort claims are dismissed.

### e. Local Law Number 5

■ Finally, Defendants argue that Plaintiffs' claims under Local Law Number 5 seeking attorneys' fees expended at their criminal trial should be dismissed because: that law applies to civil rather than criminal actions; Plaintiffs have not demonstrated that they made a demand upon the County for a defense under the local law; and, had Plaintiffs made such a demand and been denied counsel, the appropriate remedy is an Article 78 proceeding. Plaintiffs respond: "Finally, with respect to Plaintiffs' claim under Local Law 5, despite Defendants' argument, there is precedent in case law and by legislative resolution, that this statute provides for reimbursement of legal fees related to criminal matters." *See* Pl. Mem. of Law in Opp. to Def. Mot. at 25. Plaintiffs, however, do not cite to any precedent, judicial or otherwise, to support this proposition.

> Local Law number 5 provides, in part: 3(a) Upon compliance by the employee with subdivision 5 of this Local Law, the County shall provide for the defense of the employee in any civil action or proceeding, state or federal, arising out of any alleged act or omission which occurred, or allegedly occurred while the employee was acting within the scope of his public employment or duties.

*See* Stewart Aff. Ex. F. In subsection 5, the law provides:

> The duty to defend or indemnify and save harmless prescribed by this local law shall be conditioned upon: [*inter alia*]
>
> (i) delivery by the employee to the County Attorney of a written request to provide for his defense together with the original or a copy of any summons, complaint, process notice, demand or pleading within ten days after he is served with such document . . .

*See id.*

The plain language of Local Law No. 5 states that the County has a duty to indemnify employees in civil, rather than criminal, actions. Accordingly, Defendants' motion for summary judgment is granted. Alternatively, the motion is granted because Plaintiffs have not provided evidence from which a reasonable juror could conclude that they complied with subsection 5 of the law.

## III. Conclusion

For the foregoing reasons, Plaintiffs' motion for reconsideration is granted in part and this Court's September 14, 2000 Memorandum–Decision & Order, *Cipolla v. County of Rensselaer,* 113 F.Supp.2d 305 (N.D.N.Y.2000) is VACATED in its entirety.

Defendants' motion for summary judgment is GRANTED in part. Plaintiffs' Section 1983 due process claims based on defamation, state law defamation, intentional infliction of emotional distress, prima facie tort, and Local Law Number 5 are dismissed in their entirety. Defendants' motion is DENIED in all other respects.

**IT IS SO ORDERED.**